Good morning, your honors, and may it please the court. Di May Sanchez from Jones Day Pro Bono Council for Petitioner Marlon Diaz-Salgado. I respectfully request to reserve three minutes for rebuttal and I'll watch the clock. Petitioner narrowly survived an attempt on his life by the MS-13 gang in El Salvador. After going into hiding and attempting to report the gang's criminal activities to the police several times, he was beaten by several police officers, the very same people he sought to protect him. Fearing for his life, he fled to the United States in search of asylum. The court should vacate Petitioner's removal order and remand the case. The immigration judge made three significant mistakes, but I would like to focus on two. First, with respect to the INA claim, the IJ mischaracterized Petitioner's proposed social group. Second, with respect to both his INA and CAT claims, the IJ failed to give Petitioner notice and an opportunity to provide corroborating evidence to support Petitioner's testimony that he was beaten by police officers. First, turning to the IJ's mischaracterization of Petitioner's proposed social group, this error is sufficient to remand the case. Petitioner sought relief under two protracted grounds. One, membership in a particular social group, and two, political opinion. The IJ completely ignored Petitioner's claim for protection based on his political opinion, but this issue is not before the court. As to Petitioner's PSG, the IJ completely mischaracterized the group as, quote, gang recruitment by the MS-13 gang, end quote, page 79 of the record. Instead of Petitioner's proposed social group that was bolded in his pre-hearing statement on page 328 of the record, Salvadorian males who actively and vocally oppose gang or organized crime activities and have taken steps to report such activities. This court in Rios v. Lynch held the BIA's failure to address an IJ's mischaracterization of a PSG as, quote, witnesses against gangs, end quote, was error and required remand. In Alanis v. Barr, this court also remanded the case when the IJ evaluated a PSG that was, quote, Suppose we agree with you that the IJ was wrong about what the PSG was. The IJ was pretty clear, and I'm looking at, you know, 78 of the record, in his finding that the harm that Petitioner suffered was generalized violence and wasn't tied to, there was no nexus to the group, whatever the group was. So why doesn't that suffice to uphold the IJ's finding, even if he was wrong about the characterization of the group? Your Honor, under this court's precedent, generalized violence is not sufficient. But here we don't have generalized violence. We have Petitioner that was attacked by the MS-13 gang in his hometown of Victoria, went to the police there, and the police told him, go away, go into hiding, we can't do anything for you. Thereafter, he moved to Ocotillo, where he saw members of the MS-13 gang while he was in hiding, and went to the police to report the gang's criminal activities. And the police officers, instead of protecting him, told him to go away, and then ultimately beat him. And it was because he was attempting to report the gang. And so in Enrique Rivas v. Holder But we have a finding that there wasn't any nexus to any group. And you've challenged the characterization of what the group was or might have been, but it wasn't clear to me that you've challenged the finding of a lack of nexus. Have you? Your Honor, this goes to the second point, the IJ's error in finding that there was no corroborating evidence to support Petitioner's claim that he was harmed by police officers. The IJ found there was generalized violence because he found there was no evidence of the police being and did not believe Petitioner on that ground. And so his conclusion that this was just generalized violence is because he ignored the evidence that Petitioner was harmed by the police and did not provide Petitioner notice and an opportunity to support that testimony. And Ren v. Holder squarely governs here, and the government did not address or attempt to distinguish Ren, therefore conceding that it governed. And Ren, this court held that if the IJ finds that corroboration is needed, he must give the applicant notice and an opportunity to provide the evidence. Unlike in Ren, however, where the IJ told Ren he had not yet met his burden of proof and granted a continuance to allow Ren to gather corroborating evidence, here the IJ did neither. And was that an objection that you raised before the Board? Your Honor, yes. Petitioner exhausted his claims. And in any event, these are due process claims that are exempt from exhaustion requirements. On page 63 of the record, in his addendum to the notice of appeal, he argued to the BIA that the IJ erred in weighing the evidence of attack by police, which necessarily included the corroborating evidence testimony. Petitioner presented a specific error. Quote, the IJ found there was no direct evidence to support the contention that he will be tortured by the police in El Salvador. End quote. Page 63 of the record. Right, but that's so, I mean, I guess I have two questions about that, or two observations about that, and then you can respond. The first is that that's in the section of the brief devoted to the CAD claim, not asylum or withholding. And the second is, do you really think that's enough to raise, to put the Board on notice that you're making a claim that the IJ violated due process by failing to advise him of the need for corroboration? Your Honor, in Abiy Yaman v. INS, this court made clear that arguments that are made inartfully and without specific references to due process violations are eligible for review because the errors affected the outcome. Petitioner, by arguing that the IJ erred in weighing the attack by police, necessarily included the corroboration issue, that BIA had adequate opportunity to correct any errors occurring in the proceedings and were sufficiently placed on notice of that error. And even if... So, in other words, the BIA should have realized that he hadn't been given an opportunity to produce corroborating evidence? Is that the point? Yes, Your Honor, because that argument was made. But even if the court finds that the brief to the BIA did not exhaust this due process claim, the court can review because there's an exemption where there's a due process claim, and here there is because this is more than a procedural error because it affected the outcome. Tell me about the exception for due process claims that you think applies here. Yes, Your Honor. If the error is more than mere procedural and it affects the outcome, then there's an exception. And here, the IJ failing to give Petitioner notice and an opportunity to provide that corroborating evidence is error-sufficient. That affected the outcome. During the hearing, counsel for the government asked Petitioner if he had a statement to provide in corroboration of the police beating. And Petitioner... Can I ask you about that? I thought that the way the exception worked was, you know, if what you're raising is a procedural mistake, that if you had raised it to the BIA, it could have sent it back and ordered the procedural mistake to be fixed, then that's the kind of thing you do have to exhaust to the BIA. So it's not, I mean, it's not... The way you're characterizing it is, I guess, that if it's a procedural mistake but it wouldn't affect the outcome, but then why would you ever... If it wouldn't have changed anything, then why would you... I don't think it's just a procedural mistake that won't change the outcome. It's whether or not the due process claim you're raising is a procedural mistake that if you had presented it to the BIA and the BIA had agreed with you, it would have said, oh, okay, I'll send it back to the IJ. Is that an accurate reflection of the exception? Your Honor, we submit that Petitioner did raise this claim to the BIA and the BIA could have considered it. And specifically because not only was the BIA on notice, but the immigration judge during Petitioner's cross-examination, the government asked, are you saying... They asked, do you have a statement that you could provide to the court? And Petitioner responded, are you saying that this is something that I could call my mother about? And the government responded, no, I'm asking you if you have a statement from your mother that corroborates what you're saying, page 161 of the record. This was the IJ's opportunity to say, let's continue the hearing because Petitioner has volunteered to provide corroborating evidence, and I'm going to require that there be corroborating evidence on this very important issue. But the IJ did not do that. And so if this case were to be remanded, Petitioner could provide his mother as a witness that can provide testimony to his police beating, and also Petitioner lived with a roommate in Ocotillo that could have provided a declaration and actually has provided a declaration to Petitioner that shows he witnessed Petitioner come home after the police beating, he was bruised, he lived in hiding thereafter, and was in fear, and that the police are corrupt. The IJ, I think both for Catt and for withholding, had said that it provided the independent rationale that he could relocate. I didn't see that addressed at all to us. And so what do we do about that? Because if it's not raised before us, then that could be an independent basis to affirm. Your Honor, the issue of whether Petitioner could continue to live in hiding in Ocotillo or a similar community in El Salvador is intertwined with the IJ's finding that Petitioner did not provide corroborating evidence and that he could live safely in Ocotillo. And this court found – Now, did you make that? So you didn't make a relocation argument in the opening brief, I don't think, and then the government, I thought, raised it in its answering brief, and I didn't see in the reply brief ever – I don't think it was ever mentioned either way. So how – I mean, can you raise it first right now? I mean, I know you're different than the people that wrote the brief, I believe. Your Honor, the government bears the burden on relocation, but that burden only shifts to the government once Petitioner first establishes that he's eligible for relief on a protected ground. And so that burden here never shifted. But in any event, in Acosang v. Barr, this court held that it hardly seems reasonable to expect one facing persecution to be a fugitive and to live in hiding and that we do not believe an applicant – No, I know. I guess I'm not asking you to make relocation arguments now. I'm just wondering, have you – why have you not – why has your client not waived him by not having laid him before now, before us? Your Honor, we have not waived the claim because that claim necessarily is related to the corroboration evidence claim because the judge found Petitioner could live safely in Ocotillo and could continue to live safely there. And so the first error, before even reaching relocation, is this error of the failure to provide an opportunity for corroborating evidence. And then Petitioner could have provided evidence. That's an interesting argument. I don't actually know what to think of that because it's the first time hearing it. You know what I'm saying? So I'm still not sure that you haven't waived that argument by not making it until today. Your Honor, we submit that we haven't waived the argument. And though it was not artfully made, the argument is in our briefs. I see that I have gone over my time and would like some time for a rebuttal. We'll give you two minutes. Thank you very much. We'll hear from the government. Good morning, Your Honor. Sarah Pergolese for the Respondent. May it please the Court. I'd like to start this argument with a very big caveat before I reach the merits, that this Court should hold this petition for review until the conclusion about the jurisdictional issue. And there are lead cases that this Court has. This issue has come up in a lot of cases. And some panels are holding those cases for the lead case disposition. And this Court should do the same. You're talking about just the withholding claim? No, the jurisdictional issue about the timeliness of this petition for review. The Second Circuit. Exactly. I can't pronounce the name, but the Second Circuit case. Boy, I didn't quite understand your letter. Is that what you're asking us to do in the letter? So in the letter we asked. We didn't ask exactly that. You basically pulled us up and said, find the merits anyway. And that's sort of a result of this issue coming up in a lot of our cases. And admittedly, we don't have a very streamlined approach to these cases as of this moment. Yeah, I don't want to take that. But very, very quickly, essentially we're asking for two things. First and foremost, hold because this is not the lead case for this issue. And the other panels have done that. The lead case right now is Alonzo Jesus, a case. It's case number 15-72821. The panel is Judges Merguia, Bennett, and Fletcher. And at least that. I haven't done a full review of every case that has this issue, but that seems to be the one where the oral argument was set the earliest, which seems to be this court's rule for which case is the lead for an issue. Aside from holding essentially if that case gets decided in an unpublished decision, it no longer becomes the lead case. If this court reaches this issue, which is what we asked in our letter, if this court needs to reach this issue because it becomes the lead case for whatever reason, which I don't suspect given how late in the game with oral arguments this case falls in that timeline, we ask that the court set the jurisdictional rule going forward, that essentially that Guzman-Chavez and Nasrallah are irreconcilable with this case, the court's decision in Ortiz-Alfaro. But because of the reliance interest in this case, nonetheless reach the merits to show and deny the petition for review on the merits to show that the result wouldn't have been different had the jurisdictional issue been set before. It's kind of weird because I'm on another panel that has precedence over this case that has this same issue, but it was briefed by the government. So I'm aware of this issue, but we have two paragraphs about it in this case. Right. And if the court orders supplemental briefing on the issue in this case, we're happy to provide it, but we couldn't exactly. And, again, our agency's position on this issue has developed since our brief was filed in this case. I do acknowledge that our brief was filed after Bhakpati Patel was issued, but only a month after, and our office was still figuring out what to say about it and this court's precedent at that time. So, I mean, it's kind of a curious position to take to tell us, you know, we don't think you have jurisdiction, but we want you to exercise jurisdiction anyway because it would seem unfair to say that you don't have jurisdiction even though we think that's what the law is. And I want to say that I acknowledge and recognize the oddity of this position, but because of the reliance issues in this case, because of sort of the instructions that the non-citizens were given in cases like this, our office is also uncomfortable with saying, no, please just deny all of these cases. Is that right? I'm trying to remember in the other case I was on. It didn't seem like they were uncomfortable making that argument. It was very similar to this. So is this a new position your office is taking? It's the most recent. And, again, I filed this 20HA a month ago. What's the best case that supports that we could do something like that if we were to conclude that there's no jurisdiction but go on and reach the merits? You got a case that we can sort of hang our hat on? Not a great one. The court did something different in De La Rosa. But we aren't asking that you assume jurisdiction. And so, candidly, I don't have a great case. They assumed that there was a mixed question of law and fact in De La Rosa. And, yeah, so I don't think it's completely analogous to this case, and I candidly don't have a good case for asking what I'm asking you to do. I can certainly look for one and file a supplemental 20HA to further support this position. And, again, this target is barely moving. And so, again, I want to get to the merits if the court wants to get to the merits, but this is important too. I don't want to get to the merits in this case. Real quick, I'm trying to figure out what you're asking, because it seems like in this letter you were saying you don't have jurisdiction, but just ignore that and decide the case on the merits. And I think you just walked up to us just now and said, hold this case for those other cases. And that's developing, too, sort of as other panels are holding these cases. So you don't want us to do what's in the letter here? I think first and foremost hold it. If you choose not to hold it, do what's in the letter, if that makes sense. Okay. I guess we have that. Maybe turn to the merits. Yeah. And, again, I wanted to say that stuff first, but I acknowledge that it's odd. Moving to the merits, I first would like to reiterate and respond to some of the questions that Judge Miller had in that many of the issues in this case are unexhausted. This court has found that the exhaustion requirement applies when the board affirms without opinion like it did here. And, critically, a lot of the issues are also waived. The petitioner in his opening brief did not argue nexus, and that is a fully dispositive reason that the court may deny the petition for review with respect to withholding. With respect to Catt, Judge Van Dyke, you asked about this. The relocation finding, again, is both unexhausted and waived, but it is not dispositive of Catt. It is a major factor this court has held. It's a large factor, but because Catt determinations are decided more holistically instead of dispositive elements, it wouldn't be a sole basis for the court to deny this petition for review, but it is certainly a strong sum on the scale in addition to the fact that the petitioner failed to establish access. If somebody doesn't present an argument to us on something that maybe is not dispositive but would feed into the result, what do we do with that? They waived that argument, and so what do we do with that? If it's not dispositive but it could be what makes the difference in a case, one way or the other, and somebody doesn't argue it, what do we do with that? Generally, when issues are waived, the court treats them as abandoned and not litigated, not argued against. It's our position that that's important here. I thought your position here was, let's assume they've abandoned it. It wouldn't necessarily decide this case if they could relocate because it's one of the factors that goes in, but if it's a factor that goes in and they haven't made any argument about it at all, it could make the difference. It's a factor towards denying the petition for review because they haven't litigated it. I also really want to make clear that the petitioner cites a guillemot, and I know I'm mispronouncing that a couple times, with respect to the depth at which they need to exhaust issues, but that case dealt with a pro se applicant, and this petitioner was represented by counsel when he filed his appeal to the board. So the court, yes, treats exhaustion differently when it addresses counseled filings, appeals to the board, than pro se ones, but this petitioner had counsel and so should not be given the benefit of the doubt that a pro se applicant would. Let me see if I understand your argument. Let me just back up just a bit. Would you agree that the IJ mischaracterized the PSG that was articulated in the pretrial statement? Not necessarily, Your Honor. It looked a lot different to me. Certainly. The words are different, but I would argue that the immigration judge was summarizing the social group. These kinds of social groups, in particular, have shown up in this court's case law, in published case law, with different words but addressing similar situations. And so my reading of the immigration judge's decision is that the way the social group was characterized in the decision was a short stand for the kind of group it was, and a finding that the applicant's group was not different from those ones in which the agency and the court agreed, in which the applicant didn't show that that group was particular or socially distinct. Okay. But let me just, I might disagree with you on the way I read the prestatement and the way the IJ characterized it in his opinion. But let's just assume, so that was an error. Okay. But you would say, well, it doesn't really make any difference here because Not in this case because the motive finding is also dispositive as is the relocation in the, I guess, you know, on account of the nexus. Yeah. We're talking about the same thing in that sense. The motive finding in that the immigration judge is finding that, critically, the applicant did not establish any motive to a protected ground. However you frame it. And, again, I think I would respectfully say that the immigration judge was using a shorthand for this kind of social group, which comes up with different words in a lot of cases, but that functionally addresses the same fear. And I would also, again, as we noted in our response brief, I would like to point the court to the recent case in Conde Coveto, which was decided after the immigration judge's decision, but before the board affirmed without opinion, in that the petitioner added an element like the petitioner in this case is, again, a similar fear of gang opposition to gangs-related social group with an added element that's almost identical to this one of reporting those crimes to the police. And the agency found in this court agreed that the evidence in the record, there was no evidence that that reporting was socially distinct within the country. And I think the exact words of the court were that that evidence, none of the record evidence discusses reporting gang violence to the police or any risks or barriers associated with doing so. And, again, this record is identical in that regard. There's no evidence in the record that this group is different from the groups that have failed. And that issue, very critically, is also waived in the petitioner's brief. They argue that the immigration judge mischaracterized the social group and applied the wrong law, but they don't argue what law is right or how their case would have been different. Just to continue this on just one step further, which is that even assuming there was some error with respect to Nexus or even assuming it was exhausted, that, nonetheless, do you have a problem of relocation with respect to withholding? No, I don't, Your Honor. I think, again, that's another dispositive basis for denying that there's error. And just, again, to more finely clarify, even if there was an error with respect to the cognizability and delineation finding, we would not concede that there's any error in the motive finding. That's fully supported by the record in this case. Right. And the relocation finding as well. And, again, the motive, critically, was waived. The petitioner didn't argue in their brief or their reply. Did I hear you? Do you think that the petitioner properly raised to the BIA the concern about the fact that the IJ had mischaracterized his PSG? No, Your Honor. Before the board, in the brief to the board on appeal, the petitioner only stated that the group, as exactly worded in their pre-hearing statement, was socially distinct, without citing any record or case law, and that the immigration judge erred in finding that it wasn't particular because it ostensibly relied on numerosity alone. And just to be clear, these arguments that were made to the BIA were about the, if we're assuming they're two different PSGs, were about the immigration judge's PSG, the recharacterized PSG. No, about the PSG as articulated in the petitioner's pre-hearing brief, the exact wording. Again, so there's no hint that the petitioner, in appealing to the board, believes that the social group was addressed incorrectly. So I understand. Your position is that the petitioner didn't really, the petitioner continued to present his PSG as he had characterized it, and you're saying because he did that, he didn't seem to be concerned at that point about the fact that the IJ was dealing with some different PSG. It's just that he just kind of seemed to accept that the IJ just worded it differently. Right, yeah. My defense is twofold. One, that he didn't raise that the PSG was mischaracterized, but also that he, again, failed factually to prove the merits of the case, that his PSG was different in a material way, that his PSG, as opposed to these ones similar to his that have failed, is in fact socially distinct and defined with particularity. Can I ask you to go back to the CAT for just a second? I think I understood your answer to Judge Van Dyke's question to be that the relocation finding is not necessarily dispositive of that. Do you think the no acquiescence finding is dispositive of CAT, or is that also? Again, my understanding of this court's case law on CAT is that no one finding is dispositive and that that is rooted in the language of the regulation that defines what CAT issues, how one proves CAT. But, again, the acquiescence finding is certainly a very strong finding that supports denial of the petition for review in this case, the no acquiescence finding. So that kind of takes me back to, let's say there's five factors that feed in, none of which are dispositive, right? And somebody just argues two of them and doesn't argue three of them, but none of them are dispositive. Is your position that they don't waive? It seems like if you don't argue the factors, and they may not be dispositive always, but they could be dispositive in a given case. If you don't argue them, what is the court supposed to do with that? It leaves us with an inability to know how those particular factors feed into the whole analysis. I see I'm out of time. Can I answer your question? My understanding is that when issues are waived, they are abandoned and not defended, and therefore essentially conceded that they were decided correctly. And, again, with your five-factor hypothetical, I'm assuming that the immigration judge found in a case like this ruled on all of those five factors. And in the opening brief, you only challenged two. And you only challenged two, so it kind of leaves us with, well, what do you think of the other three? Right. I mean, it's a good question. I think that the court can find that the petitioner, in not litigating those issues, has essentially had the language in the court's opinions is that it's abandoned those findings. But I think that means that they're not defended. Isn't it just a question of substantial evidence? Yes, in cap findings, absolutely, Your Honor. And, again, what's critical with waivers, that's a great question that I think, when an applicant, again, this is an adversarial process, that the petitioner doesn't argue something, and especially here where they're really not pointing to any record evidence that compels the contrary result for this court, the court can take into account that the applicant hasn't done that. But, of course, as I think the panel said fairly jokingly in another case today, the court, of course, looks at the record. And, critically, this record lacks evidence that would compel a finding that the applicant met their burden for cut on a whole. And, again, the oddity of the timeliness issue aside, we would ask that the court deny this petition for review. Thank you, Your Honors. Thank you, Counsel. Ms. Sanchez, two minutes. Your Honors, as to the Rule 28J letter, we rest on our response. As to the merits of this case, we disagree that there was no nexus argued. We argue that petitioner faced future persecution for vocally opposing the gang. Indeed, he was beaten by police officers for doing that. And, on page 353 of the record, he has stated, if I return to El Salvador, the MS-13 will find me and kill me because I have been refusing to join them and I have reported them to the police. And the IJ here did not just summarize petitioner's proposed social group. He completely mischaracterized it. And under this Court's holding in Alaniz v. Barr, mischaracterizing a group and defining it even somewhat different is sufficient to remand. As to Conde Cavero, that case is distinguishable. There, petitioner just filed a report but did not speak out publicly. And the Court noted the possibility that reporting gang violence to police could suffice to establish eligibility if people in the community knew who reported crimes to the police. And it also outlined several factors, including if the petitioner had met with multiple police officers, provided a statement in a public precinct room. Here, on page 460 of the record, we have that petitioner was beaten by several police officers in a public precinct room. On page 199 of the record, we have that people in El Salvador fear reporting crimes and are afraid that if they will report, the gang will come after them. On page 200 of the record, we have that there's little attention to victims and no one wants to come forward to speak between the gang's looming threat to kill. Those that speak and the government's inability to protect them, a culture of silence with regard to corruption and violence has been created. Petitioner has actively and vocally opposed the gang. He nearly died in the first attempt by the gang to kill him. And when he went to the police in his hometown in Victoria, the police told him, go away, we cannot help you, go into hiding. And that's precisely what he did. He went to a small town, Rocotillo, and lived with a childhood friend where he saw the MS-13 gang and went to the police officers to report them. And the police told him to go away and eventually beat him. And thereafter, he lived in hiding, fearing for his life. We have created a nexus between petitioner's proposed social group and the harm that he's likely to suffer. Ms. Sanchez, you're over your time, but we have your argument. So thank you. And you were appearing by appointment of this court pro bono, and the court thanks you for your service. We thank both counsel for their arguments this morning, and the case is submitted. Thank you very much for the opportunity. All rise. This court for this session stands adjourned.
judges: PAEZ, MILLER, VANDYKE